Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 1 C 7748 | **DATE** | 12/1/2003 |
| **CASE TITLE** | U.S.A. ex rel Arthur Unger vs. Guy Pierce | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We deny petitioner Arthur Unger's section 2254 petition for a writ of habeas corpus [0-1]. This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | DEC 03 2003 date docketed | |
| ✓ X | Docketing to mail notices. | | 15 |
| ✓ X | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 03 DEC -2 PM 8:24 | |
| TSA | courtroom deputy's initials | FILED-EO 10 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ARTHUR UNGER, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 01 C 7748 ) ) Wayne R. Andersen |
| GUY PIRECE, Warden, Pinckneyville Correctional Center, | ) District Judge ) ) |
| Respondents. | ) |

## MEMORANDUM, OPINION AND ORDER

DEC 0 3 2003

This case is before the Court on the petition of Arthur Unger for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the petition for habeas corpus is denied.

## BACKGROUND

Following a jury trial in the Circuit Court of Will County, Illinois, Arthur Unger was found guilty of aggravated battery, in violation of 720 ILCS § 5/12-4(a), and unlawful use of a weapon by a felon, in violation of 720 ILCS § 5/24-1.1. He was sentenced to a term of incarceration for nine years.

At trial, Ruth E. Walton, who was Petitioner's girlfriend, testified that he abused her repeatedly over a period of three days. Specifically, she testified that Petitioner threatened her with a gun (hitting her with it and firing it next to her ear), hit her with a baseball bat, choked her with an electrical cord, and approached her with a knife. Walton later testified that Petitioner had instructed her to stay in the home where the abuse occurred and that he threatened to hurt her if she left. Walton testified that Petitioner dragged her over to the house of a neighbor, Nannette

15

Johnson, after he allegedly hit her in the face. Walton also testified that Petitioner hit her in front of Ms. Johnson.

Other prosecution witnesses contradicted Walton's testimony. The neighbor, Nannette Johnson, for example, testified at the trial that she did not notice anything wrong with Walton's face and that she never saw Petitioner hitting, pulling, or dragging her. Other witnesses claimed they did not hear any arguing or screaming coming from Petitioner's residence during the time of the alleged abuse. Moreover, most of the witnesses testified they had never seen Petitioner hit Walton.

Will County Sheriff's Officer Steve Hunter testified as a prosecution witness. He stated that he responded to a call placed by Walton at Petitioner's residence. When Hunter asked Walton about her black eyes, she told him that she had gotten into a fight two days earlier with two other individuals. Hunter offered her medical assistance, but she declined. When Hunter asked to step inside the residence to check things out, Walton refused and claimed that there was no need.

The morning after Officer Hunter was called to Petitioner's residence, Officer Raymond Gleason was dispatched to the residence. Officer Gleason testified that Walton answered the door. In addition to Walton's black eyes, Gleason noticed that her ears were purple and her neck was covered with dried blood. Walton told Gleason that she had been in a fight with some girls. Gleason then took Walton outside to his police car and, once in the car, she admitted that Petitioner was the cause of her injuries.

Despite the confusing and contradictory testimony presented at trial, the jury found Petitioner guilty of one count of aggravated battery and one count of unlawful possession of a

weapon by a felon. However, on the two counts of armed violence and one other count of aggravated battery, the jury found him not guilty.

A month and half after the jury verdict, Petitioner appeared for his sentencing hearing. The State requested a continuance so that Ms. Walton could be present and testify at the sentencing hearing. At that time, Petitioner advised the court that he had filed a civil rights complaint in federal court against the presiding judge, the state's attorney, his defense counsel, and several others. He also made various allegations against the jurors and the judicial process. In addition, Petitioner requested that his sentencing be continued until his federal lawsuit was resolved. Petitioner also expressed dissatisfaction with his trial counsel and told the court that he no longer wanted his trial counsel to continue to represent him. A continuance was granted, but the judge informed Petitioner that his sentencing would proceed notwithstanding the federal lawsuit.

When Petitioner appeared for the rescheduled sentencing hearing, he once again was represented by his original trial counsel. This time Petitioner's counsel requested a continuance because Petitioner had made certain allegations regarding a juror that may have been relevant to a possible motion for a new trial. The court granted counsel's request for additional time.

Eleven days later, Petitioner again appeared for his sentencing hearing with his original trial counsel. When the court allowed Petitioner to address the court, he reasserted his dissatisfaction with the representation he had received and argued that his attorney failed to investigate certain matters that Petitioner had requested. The court ultimately sentenced Petitioner to nine years in prison.

Petitioner appealed his conviction and sentence to the Illinois Appellate Court. In his appeal, Petitioner raised the following issues: a) the circuit court erred in not appointing new trial counsel for sentencing and other post-trial matters because a conflict of interest existed between Petitioner and trial counsel; b) the judge erred in not disqualifying himself for sentencing and other post-trial matters because a conflict of interest, bias, and/or appearance of impropriety existed; and c) the State failed to prove Petitioner's guilt beyond a reasonable doubt. The Illinois Appellate Court affirmed Petitioner's conviction and sentence on June 2, 2000.

Petitioner filed a petition for leave to appeal the Appellate Court's decision to the Illinois Supreme Court. Petitioner raised the following issues: a) the trial court erred in not appointing new trial counsel for sentencing and other post-trial matters because a conflict of interest existed between Petitioner and trial counsel; b) the judge erred in not disqualifying himself for sentencing and other post-trial matters because a conflict of interest, bias, and/or appearance of impropriety existed; c) the State failed to prove Petitioner's guilt beyond a reasonable doubt; and d) Petitioner's sentence constitutes an extended term and is, therefore, unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The petition for leave to appeal was denied on June 6, 2001.

Petitioner did not file a petition for post-conviction relief in the State courts. Petitioner then filed his petition for writ of habeas corpus in this Court. In his habeas petition, he has raised four claims: (1) the trial court erred in failing to appoint a new attorney to represent Petitioner for sentencing and during other post-trial proceedings; (2) the trial judge erred in not disqualifying himself from the post-trial proceedings in light of an alleged conflict of interest; (3) the State

failed to prove Petitioner guilty beyond a reasonable doubt; and (4) the extended term sentence he received was unconstitutional.

## DISCUSSION

Federal courts may issue a writ of habeas corpus only if a petitioner demonstrates that he is "in [state] custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law"). Habeas relief under section 2254 may be granted if a state court's judgment either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Boss v. Pierce*, 263 F.3d 734, 738 (7th Cir. 2001).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."). A petitioner exhausts his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1995).

5

In this case, exhaustion is not an issue. Petitioner has exhausted his state court remedies for purposes of federal habeas review because he has no further avenues in state court through which to challenge his conviction. We now turn to the merits of this petition.

As mentioned above, Petitioner has raised the following four claims: (1) the court erred in not appointing new counsel for sentencing and other post-trial matters because a conflict of interest, bias, and/or appearance of impropriety existed; (2) the trial judge erred in not disqualifying himself for sentencing and other post-trial matters because a conflict of interest, bias, and/or appearance of impropriety existed; (3) the State failed to prove Petitioner guilty beyond a reasonable doubt; and 4) his sentence constitutes an extended term and, therefore, is unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We will address each of these claims in turn.

### I. Attorney Conflict Of Interest

Petitioner first contends that the trial court erred in not appointing new counsel for sentencing and other post-trial matters, because a conflict of interest existed between Petitioner and his trial counsel after Petitioner filed his federal lawsuit. Thus, Petitioner's claim essentially is an allegation of ineffective assistance of counsel due to his attorney's alleged conflict of interest.

The Supreme Court's recent decision in *Mickens v. Taylor*, 535 U.S. 162 (2002), modified the previous analysis for ineffective assistance of counsel claims based on a conflict of interest. In order for a petitioner to prevail after *Mickens*, he must establish that an actual conflict of interest adversely affected his attorney's performance. *Id.* at 170. An actual conflict exists when an attorney actively represents incompatible interests-- it is more than a "mere theoretical

division of loyalties." *Id.* Moreover, to obtain a new trial, a defendant must prove that the conflict manifested itself as "an actual lapse in representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980).

Petitioner claims that the issues raised in his federal lawsuit created a conflict of interest with his trial counsel. Specifically, Petitioner alleges that his counsel's performance was deficient in that: (1) trial counsel failed to investigate an incidence in which the victim made similar allegations against another individual; (2) counsel failed to investigate some unarticulated claim about a juror; and (3) counsel failed to provide assistance to Petitioner in obtaining a contact visit.

We find that Petitioner's claim is without merit. First, we are not satisfied that an actual conflict of interest existed. Although, at the time of sentencing and post-trial matters, Petitioner had filed a federal civil rights lawsuit against his counsel, counsel was not representing incompatible interests. There is no evidence that counsel's interests were misaligned with Petitioner's. Moreover, even if Petitioner had established that an actual conflict of interest existed, he has failed to establish that the alleged conflict adversely affected his attorney's performance. Petitioner does not assert any direct connection between his counsel's actions and the alleged conflict. The record indicates that defense counsel conducted a vigorous defense and that Petitioner was well represented at the sentencing hearings. Petitioner has not proven that there was "an actual lapse in representation." *See Cuyler*, 446 U.S. at 349.

For these reasons, we find that Petitioner did not receive ineffective assistance of counsel based on counsel's alleged conflict of interest. Therefore, we deny Petitioner's claim for habeas relief on this ground.

## II. Judicial Bias

Petitioner next argues that the trial judge erred in not disqualifying himself and assigning the case to another judge for sentencing and post-trial matters. When confronted with allegations of a state court judge's bias or prejudice, the Supreme Court has recognized that "it is normally within the power of the State to regulate procedures under which its laws are carried out…and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Aetna Life Insurance Co. v. Lovoie*, 475 U.S. 813, 821 (1986) (quoting *Patterson v. New York*, 432 U.S. 197, 201-02 (1977)). Only the most extreme cases of bias or prejudice would be sufficient under the Due Process Clause to force a judge to be disqualified. *Aetna Life*, 432 U.S. at 821.

Petitioner points to the claims, including civil rights violations and other alleged violations by the trial judge, set forth in his federal lawsuit as the bases for judicial bias and the alleged conflict of interest. However, Petitioner's claims of judicial bias do not stem from any extrajudicial source, such as a financial interest or personal relationship between the judge and the prosecutor. Moreover, Petitioner's suggestion that the judge had a self-interest to have him convicted and incarcerated patently are without merit. We have carefully reviewed the record, and we cannot find any evidence that the trial judge was prejudiced against Petitioner or that the pending federal lawsuit created any conflict of interest. Therefore, Petitioner's habeas claim is denied.

### III. Guilt Beyond A Reasonable Doubt

Petitioner next argues that the State failed to prove him guilty beyond a reasonable doubt. In order for a petitioner to prevail on a section 2254 petition alleging insufficient evidence to sustain a guilty verdict, he must show "that upon the record evidence adduced at the trial no rational tier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

Stated simply, an individual's guilt or innocence depends on the credibility of the witnesses and the weight the jury gave to their testimony. Before returning their verdict, the jurors listened to the victim, Ms. Walton, testify as to the abuse and injuries she endured at the hand of the Petitioner as well as to the contradictory testimony offered by the other witnesses. The jury chose to believe the victim with respect to the two counts on which the jury found Petitioner guilty. After reviewing the record, we are not prepared to say that the jury's conclusion was unreasonable.

The police officers' testimony supported some of the victim's claims and failed to support others. The jury returned not guilty verdicts on three of the charges against Petitioner, including two of the most serious charges. Thus, it is clear that the jury reviewed the evidence, weighed the credibility of the witnesses and determined which charges had been proven. Therefore, we deny Petitioner's petition for habeas corpus on this ground.

### IV. Apprendi Violation

Petitioner also maintains that he received an extended term sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court established that any increase from the statutorily prescribed maximum penalty, other than a prior conviction,

9

must be submitted to the jury and proved beyond a reasonable doubt. *Id.* at 490. *Apprendi* did not invalidate lower courts' authority to increase a defendant's sentence because of a prior conviction. *Id.* Rather, it clearly specifies that prior convictions are an acceptable factor to be considered by the judge in determining the length of a sentence.

The record shows that Petitioner was convicted of two class three felonies and sentenced to an extended term pursuant to 730 ILCS 5/5-8-2 and 730 ILCS 5/5-5-3-2, and not as a class X offender as he claims. The state court relied upon the aggravating factor of Petitioner's prior convictions in sentencing him to an extended term, which is within the permissible scope of *Apprendi*. Therefore, Petitioner's claim for habeas relief on this ground is denied.

## CONCLUSION

For the foregoing reasons, we deny Petitioner Arthur Unger's section 2254 petition for a writ of habeas corpus. This is a final and appealable order. This case is terminated.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: December 1, 2003